# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **STEVEN M. VIOLETTA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 16-1193-JTM-GEB** |
| | ) | |
| **STEVEN BROTHERS SPORTS** | ) | |
| **MANAGEMENT, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On July 24, 2017, the Court held an in-person hearing to discuss the following

pending motions:

- Plaintiff's Motion to Amend Complaint (**ECF No. 50**);
- Defendants' Motion for Leave to File Amended Answer and Counterclaims (**ECF No. 57**);
- Plaintiff's Motion to Compel Discovery (**ECF No. 75**); and
- Parties' Joint Motion to Extend All Deadlines (**ECF No. 78**).

Plaintiff appeared through counsel, Boyd A. Byers and Sharon E. Rye. Defendants

appeared through counsel, Aaron J. Good. After consideration of both the arguments of

counsel and the parties' briefing, the Court announced the following rulings at the

hearing: Plaintiff's Motion to Amend Complaint (**ECF No. 50**) was GRANTED;

Defendants' Motion for Leave to File Amended Answer (**ECF No. 57**) was GRANTED

as unopposed; and the parties' Joint Motion to Extend All Deadlines (**ECF No. 78**) was

GRANTED in part and DENIED in part (*see* Order, ECF No. 85). The Court deferred

ruling on Plaintiff's Motion to Compel Discovery (**ECF No. 75**) pending Defendants'

submission and the Court's in camera review of specific documents contained in Defendants' third privilege log (Order, ECF No. 85).

Having reviewed the parties' briefing, the oral arguments of counsel, and the documents submitted in camera, the Court is now prepared to rule. For the reasons set forth below, Plaintiff's Motion to Compel Discovery (**ECF No. 75**) is **GRANTED** in part and **DENIED** in part. Additionally, the Court addresses the other pending motions discussed at hearing.

## I.  Factual Background

Plaintiff Steven M. Violetta was hired in August 2015 as the Chief Executive Officer of three hockey franchises owned and operated by defendants Steven Brothers Sports Management, LLC ("SBSM"), Brandon Steven, and Rodney Steven. After approximately seven months on the job, Defendants terminated Plaintiff's employment. He then filed this federal claim on June 10, 2016, alleging the three defendants failed to pay him under the bonus and commission provisions of the parties' Employment Agreement, and failed to pay him all wages due to him under the Kansas Wage Payment[1] laws. In his Complaint, Plaintiff also claims Defendants violated the Consolidated Omnibus Budget Reconciliation Act ("COBRA")[2] by failing to provide him notice and offer him continuation of his group health coverage, and violated the Employee Retirement Income Security Act of 1974 ("ERISA")[3] by refusing to provide copies of his employee benefit plan documents. His initial Complaint seeks a Court order directing

---

[1] Kansas Wage Payment Act, K.S.A. § 44-313, *et seq.*
[2] 29 U.S.C. §§ 1161, 1166.
[3] 29 U.S.C. §§ 1001 *et seq.*

Defendants to provide the requested plan documents, remedial measures for the COBRA and ERISA violations, and compensatory damages, statutory penalties, costs and attorney fees for all claims.

Following the oral rulings announced at the July 24 hearing, Plaintiff filed his First Amended Complaint (ECF No. 86). In his amended pleading, Plaintiff kept his original claims, and added age discrimination ("ADEA")[4] claims and an additional ERISA claim for breach of fiduciary duty. The Amended Complaint also names five additional defendants, including Steven Brothers Sports Management of Allen, LLC ("SBSM-A") and Johnny Steven (who, together with the original defendants are referred to as the "Steven brothers"). Plaintiff also named three Genesis Health Club defendants: Genesis Health Clubs Management, Inc.; Genesis Health Clubs Management, LLC; and Genesis Health Club, Inc. (collectively, "Genesis"). In his Amended Complaint, Plaintiff claims all Defendants are jointly and severally liable for his claims. He alleges SBSM, SBSM-A, and Genesis function as an integrated enterprise, because they "have interrelated operations, common ownership, common financial control, common management at the top level, and centralized control of human resources." (ECF No. 86, ¶ 32.) Plaintiff claims SBSM and SBSM-A shared his services and control over his position, and there was no real separation between the Steven brothers, on the one hand, and SBSM, SBSM-A, and Genesis, on the other. (ECF No. 86, ¶¶ 33-34.)

---

[4] Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*

## II. Procedural Posture

The entry of a scheduling order in this case was initially postponed, and discovery limited, in order to allow the parties to attempt early mediation (Order, ECF No. 18). After early mediation was unsuccessful, a Scheduling Order was entered on January 20, 2017 (ECF No. 28). This schedule has continued to govern this case leading up to the filing of the recent motions, each of which is discussed below.

## III. Plaintiff's Motion to Amend Complaint (ECF No. 50)

Plaintiff's motion seeking to amend his Complaint was his first request for amendment. As noted above, he sought amendment to add an ADEA claim, an additional ERISA claim for breach of fiduciary duty, and to add five defendants, including SBSM-A; Johnny Steven, and three Genesis defendants. Although the Court orally granted Plaintiff's motion (ECF No. 85), and the Amended Complaint was recently filed (ECF No. 86), the Court briefly explains the rationale behind its ruling.

### A. Legal Standard

A party may amend its pleading as a matter of course under Fed. R. Civ. P. 15(a)(1), either before the responding party answers or within 21 days after service of a responsive pleading. However, in cases such as this, where the time to amend as a matter of course has passed, without the opposing party's consent a party may amend his pleading only by leave of the court under Rule 15(a)(2).

Rule 15(a)(2) provides leave "shall be freely given when justice so requires," and the decision to allow an amendment is within the sound discretion of the court.[5] The court considers a number of factors in deciding whether to allow an amendment, including timeliness, prejudice to the other party, bad faith, and futility of amendment.[6] In exercising its discretion, the court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities."[7] The Tenth Circuit acknowledged that Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties,'"[8] especially in the absence of bad faith by an offending party or prejudice to a non-moving party.[9]

## B.    Issues Regarding Amendment

Defendants do not dispute SBSM-A may be added as a party. Nor do they argue there exists any undue delay, dilatory motive, prior failure to cure deficiencies, or undue prejudice. They oppose the amendment only on grounds of futility and bad faith, citing four primary arguments: 1) the ADEA claim is time-barred; 2) Plaintiff lacks standing to

---

[5] *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, No. 11–2112–EFM, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (citing *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1494 (10th Cir. 1995)).

[6] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Monge v. St. Francis Health Ctr., Inc.*, No. 12–2269–EFM-JPO, 2013 WL 328957, at *2 (D. Kan. Jan. 10, 2013) report and recommendation adopted, 2013 WL 328986 (D. Kan. Jan. 29, 2013).

[7] *Hinkle v. Mid-Continent Cas. Co.*, No. 11–2652–JTM-KMH, 2012 WL 2581000, at *1 (D. Kan. July 3, 2012) (citing *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989)).

[8] *Carefusion 213, LLC v. Professional Disposables, Inc.*, No. 09–2616–KHV–DJW, 2010 WL 4004874, at *4 (D. Kan. Oct. 12, 2010) (citing *Minter*, 451 F.3d at 1204) (quoting *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

[9] *See AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 15-9260-CM-GEB, 2016 WL 6163832, at *4 (D. Kan. Oct. 24, 2016) (collecting cases; internal citations omitted).

make an ERISA claim for breach of fiduciary duty; 3) Plaintiff's attempt to add the Genesis defendants is in bad faith; and 4) Plaintiff fails to state a claim against Johnny Steven because he is exempt from liability under the Kansas LLC law. Each of Defendants' contentions is addressed below.

### 1.     ADEA Claim is Not Untimely as Pleaded

In Defendants' Response (ECF No. 54) to Plaintiff's motion to amend, they argue his ADEA claim is untimely because he filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") too late. In Plaintiff's First Amended Complaint, he alleges he was terminated on March 11, 2016 (ECF No. 86, ¶ 23). Defendants claim they actually terminated him a month earlier, on February 11, 2016. Although the parties dispute what date the actual termination took place, at this stage, the Court reviews claims of futility under a motion to dismiss standard. In doing so, "the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party."[10] Viewing the well-pleaded allegations in the light most favorable to Plaintiff, the Court accepts Plaintiff's contention he was terminated in March.

Plaintiff filed his EEOC Charge on December 6, 2016. In their Response, Defendants claim his EEOC charge was filed on Dec. 9, 2016. However, it is clear from the Charge itself, attached to Plaintiff's Reply (ECF No. 63, Ex. B), Plaintiff filed with the EEOC on December 6 and Defendants received their copy on December 9, 2016.

---

[10] *Anderson v. PAR Elec. Contractors, Inc.*, 318 F.R.D. 640, 642 (D. Kan. 2017) (citing *Carefusion 213*, 2010 WL 4004874, at *5) (internal citation omitted).

Therefore, the remaining question before the Court is whether the 270 days between March 11, 2016 (Plaintiff's alleged termination date) to December 6, 2016 (Plaintiff's filing of the EEOC charge) was within the time required by law.[11]

At the July 24, 2017 hearing, Defendants conceded much of its arguments regarding timeliness were based upon their incorrect reading of the EEOC filing date. Additionally, Defendants announced that, after a review of Plaintiff's Reply brief and the authority contained therein, they abandoned their arguments regarding the timeliness of Plaintiff's proposed ADEA claim. Therefore, without further analysis, the Court accepts the ADEA claims as timely pleaded.

### 2. Plaintiff Does Not Clearly Lack Standing to Make an ERISA Claim for Breach of Fiduciary Duty

Defendants also argue Plaintiff's new ERISA claim, for breach of fiduciary duty, is duplicative of his original ERISA claim for failure to produce plan documents. Defendants further contend Plaintiff lacks standing to bring a breach of fiduciary claim, because 29 U.S.C. §1109 creates liability to the plan itself, but does not allow an individual to make a claim for personal damages against a plan fiduciary. Plaintiff rebuts this argument by noting Defendants ignore other sections of the ERISA statutes, sections 1132(a)(2) and 1132(a)(3), that permit this type of claim.

---

[11] Generally, an ADEA charge must be filed with the EEOC within 180 days after the alleged unlawful employment action, unless "a state administrative agency process exists to remedy the alleged discrimination," which extends the filing period to 300 days. *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1176 (10th Cir. 2011) (citing 29 U.S.C. § 626(d)(1)(B)).

A District of Kansas case, *Sigurdson v. Southmark-Nat'l Heritage, Inc.*, specifically permitted a similar claim to proceed.[12]  In *Sigurdson*, the plaintiff alleged the defendants breached their fiduciary duty by failing to send COBRA notices.  Although the court acknowledged a plaintiff cannot bring a private cause of action for money damages against plan fiduciaries for breach of a fiduciary duty, it also noted "an individual beneficiary may sue 'in a representative capacity on behalf of the plan as a whole.'"[13]

On review of *Sigurdson*, Plaintiff appears to state at least a plausible claim under 29 U.S.C. § 1132(a)(2) or § 1132(a)(3).  During the hearing, Defendants admitted Plaintiff may appropriately bring a section 1132 claim, but argued whether he brings his fiduciary duty claim on behalf of the plan itself—as required—is unclear.  However, the broadness of the claim can be narrowed through discovery and crystalized before the entry of a Pretrial Order.[14]  Additionally, the new claim does not appear duplicative of the original ERISA claim.  Plaintiff is permitted under Fed. R. Civ. P. 8(a)(3) to assert alternative theories.  Because discovery may reveal any Defendant to be only an administrator or only a fiduciary, Plaintiff's claims against all Defendants are protected by including both theories at this stage of litigation.  Because Plaintiff is permitted to bring alternative theories, and the claim appears plausible, on its face, the Court will not prevent assertion of the ERISA breach of fiduciary duty claim on the basis of futility.

---

[12] *Sigurdson v. Southmark-Nat'l Heritage, Inc.*, No. 90-2266-GTV, 1992 WL 331438, at *7 (D. Kan. Nov. 3, 1992) (citing *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134 (1985)).
[13] *Id.*
[14] *See id.* (noting the Pretrial Order in that case "discloses that plaintiff's claim for breach of fiduciary duties is brought only on behalf of the [health] Plan").

### 3. Plaintiff's Attempt to Add the Genesis Defendants is Not in Bad Faith

Defendants contend Plaintiff seeks the addition of the Genesis defendants in bad faith, because Plaintiff did not first attempt to discover which Defendant(s) are the proper administrators of the benefits plans before seeking to add Genesis. Rather than add additional parties, Defendants argue Plaintiff should have first asked more pointed discovery questions or contention interrogatories. But Plaintiff contends the bulk of his dealings with Defendants regarding his COBRA and plan document inquiries were largely with Genesis employees. In fact, the documents identified in Defendants' privilege log (*see* discussion *infra* Section V., Plaintiff's Motion to Compel) demonstrate that Genesis employees were heavily involved in responding to Plaintiff's requests for information.

In order for the party opposing amendment to succeed on a claim of bad faith amendment, "[t]he movant's bad faith must be apparent from evidence of record."[15] "Bad faith" is defined as "dishonesty of belief, purpose or motive."[16] But given the Genesis defendants' apparent relationship with the SBSM and Steven brothers' defendants, and Plaintiff's dealing with them, the Court perceives no apparent bad faith on Plaintiff's part. Although Plaintiff acknowledges his claims could be narrowed through discovery, such as Rule 30(b) depositions, his claims against the Genesis defendants do not appear dishonest or borne of some ulterior motive. Therefore, the Court will not bar Plaintiff's amended complaint on the basis of bad faith.

---

[15] *Koch*, 127 F.R.D. at 211 (internal citations omitted).
[16] *Bad faith,* Black's Law Dictionary (10th ed. 2014).

### 4. Plaintiff's Claim against Johnny Steven is Not Futile

Defendants argue Plaintiff's claim against Johnny Steven is futile, in part because a core claim of the lawsuit is Plaintiff's breach of contract claim, and Johnny Steven was not a signatory to Plaintiff's employment agreement. Defendants also contend K.S.A. § 17-7688 exempts a member or manager of an LLC from personal liability, and Plaintiff's claim against Johnny personally cannot survive. But Plaintiff maintains he seeks to hold Johnny Steven liable in his personal capacity as permitted by both ERISA and the KWPA.[17] Plaintiff also argues he sets forth sufficient allegations to support an alter ego argument, or piercing the corporate veil, to hold Johnny Steven personally liable for any violations committed by SBSM and SBSM-A.

Defendants do not refute Plaintiff's claim that all three Steven brothers are partial owners of SBSM & SBSM-A, with Rodney and Brandon each owning 45% and Johnny owning 10% of the companies. And, although K.S.A. § 17-7688 may exempt a member or manager of an LLC from personal liability, generally, both the KWPA and ERISA could impose personal liability on Johnny if Plaintiff is successful in piercing the corporate veil. This will be a highly fact-dependent issue, and rather than prohibit Plaintiff from pursuing this claim at the outset, the Court finds it more appropriate to permit Plaintiff to conduct discovery on the topic and determine its viability in a later

---

[17] Plaintiff cites Section 1132 of ERISA, which states that an administrator who fails to comply with a request for information may be "personally liable to such participant or beneficiary . . .". 29 U.S.C. § 1132(c)(1). He also contends both COBRA and ERISA permit personal liability in other circumstances, citing decisions from other districts. (Pl.'s Reply, ECF No. 63 at 16-17, citing *Fleck v. WILMAC Corp.*, No. 10-05562, 2011 WL 1899198, at *14 (E.D. Penn. May 19, 2011); and *Trs. of Amalgamated Ins. Fund v. Danin*, 648 F. Supp. 1142, 1146-47 (D. Mass. 1986)). He also cites K.S.A. § 44-323(b) to argue "any officer, manager, major shareholder or other person charged with the affairs of an LLC may be treated as an employer and held liable for violations of the KWPA." (Pl.'s Reply, ECF No. 63 at 17.)

dispositive motion. The claims are well-pleaded, and the Court does not find the claims against Johnny Steven to be clearly futile.

### C. Conclusion on Amendment

Despite their stated arguments addressed above, Defendants fail to present any argument regarding the prejudice they might face if the amendment were permitted. As the party opposing the amendment, Defendants bear the burden to demonstrate undue prejudice within the meaning of Rule 15.[18] Given Defendants' complete disregard of this "most important factor,"[19] the Court finds Defendants failed to demonstrate prejudice sufficient to prohibit the proposed amendment. And, considering the nature of the new claims, the relationship between the original and proposed defendants, and the procedural posture of the litigation, the Court struggles to discern any true injustice which would occur from adding the new claims and additional defendants. The deadlines in this matter will be revised, at the parties' request (*see* discussion *infra* Section VI., Joint Motion to Extend All Deadlines). This new schedule will provide the parties with adequate time to conduct discovery and will permit all Defendants with sufficient opportunity to fully defend the new claims.

---

[18] *Carefusion 213*, 2010 WL 4004874, at *4 (internal citations omitted).
[19] *Minter*, 451 F.3d at 1207 (noting, "The second, and most important, factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party.")

In the absence of undue delay, bad faith, futility, or prejudice to the opposing party, "leave to amend should, as the rules require, be freely given."[20] Finding Plaintiff's proposed amendment is timely, not futile, lacking bad faith, and causes no undue prejudice to Defendants, the Court prefers this case to proceed on its full merits.[21] In the interests of justice, the Court allows Plaintiff to amend his Complaint as announced at hearing.

## IV.  Defendants' Motion for Leave to file Amended Answer and Counterclaims (ECF No. 57)

Defendants sought to add two counterclaims against Plaintiff, alleging: (1) violations of the Kansas Uniform Trade Secrets Act, and (2) violations of the Computer Fraud and Abuse Act.  After Defendants filed their motion (ECF No. 57), Plaintiff indicated in his Response (ECF No. 65) he did not oppose Defendants' amendment, but asked that the filing of Defendants' amended pleading be postponed until after Plaintiff was permitted to file his amended complaint.  These positions were confirmed at the July 24, 2017 hearing.

Finding the Motion for Leave to file Amended Answer and Counterclaims  (ECF No. 57) unopposed, the Court orally granted the motion and ordered Defendants to file their amended pleading after Plaintiff filed his Amended Complaint (*see* Order, ECF No. 85).  Defendants recently filed their Answer to the Amended Complaint and Counterclaims (ECF No. 88).

---

[20] *McNamara v. Am. Family Mut. Ins. Co.*, No. 13-2195-KHV-KGG, 2013 WL 5467078, at *1 (D. Kan. Sept. 30, 2013) (citing *Foman,* 371 U.S. at 182; *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir.1993)).

[21] *See Hinkle*, 2012 WL 2581000, at *1 (citing *Koch*, 127 F.R.D. at 209).

**V.      Plaintiff's Motion to Compel Discovery (ECF No. 75)**

In addition to his request to amend, Plaintiff also seeks to compel certain discovery responses from Defendants.  Plaintiff served four sets of requests for production (RFP) on defendants SBSM, Rodney Steven, and Brandon Steven, beginning with the first set on July 28, 2016 and ending with the final requests sent December 15, 2016 (Pl.'s Mem., ECF No. 76).  After various discussions and agreements between the parties, Defendants responded to these requests on January 9, 2017.  Since then, the parties have continued to confer in an effort to resolve the ongoing disputes regarding Defendants' responses.[22]  Due to the parties' continuing efforts, neither party raises the issue of timeliness concerning Plaintiff's motion.

**A.      Compliance with D. Kan. Rule 37.2**

Throughout the briefing, and during the in-person hearing, the parties demonstrated their multiple attempts to resolve their differences on the pending discovery issues.  Therefore, the Court is satisfied they have sufficiently conferred as required by D. Kan. Rule 37.2 and Fed. R. Civ. P. 37(a)(1).  However, despite their attempts, the parties could not resolve all disputes, leading to the instant motion.

**B.      Discovery Disputes**

Notwithstanding the parties' efforts, two primary discovery issues remained for discussion at the July 24, 2017 hearing.  First, Plaintiffs seek disclosure of documents

---

[22] Plaintiff filed multiple motions to extend time to file his motion to compel, which were unopposed by Defendants.  *See* ECF Nos. 24, 25, 32, 33, 38, 39, 45, 47, 52, 53, 59, 62, 66, 67, 69, 71, 73, and 74 (motions and orders permitting additional time to file the motion to compel).

related to the sale of the Allen Americans franchise.  Second, Plaintiff requests production of information included on Defendant's privilege log.  Those documents were delivered to the chambers of the undersigned on July 24, 2017.  The Court has reviewed the documents and is now prepared to rule.  Each category of information is addressed in turn.

### 1. Documents Related to the Sale of the Allen Americans Franchise (Plaintiff's RFP Nos. 25-26)

In February 2017, SBSM-A sold its Allen Americans hockey franchise to a Texas company, Allen Hockey Team, LLC (ECF No. 79, at 1).  Months earlier, in Plaintiff's initial discovery requests, he sought information regarding the potential sale.  Plaintiff's Request for Production No. 25 seeks "all documents relating to the sale or potential sale of Allen Americans."  In Request No. 26, he asks Defendants to produce "all documents provided by SBSM to [any] current potential buyer," with various types of documents included in the request.  Although these requests, as written, appear quite broad, over the past several months Plaintiff agreed to limit the requests to the following four topics:

> (1) communications with prospective buyers or the eventual buyer that reference Plaintiff;
>
> (2) communications and documents relating to performance of the franchise during the 2015-2016 season, when Plaintiff was its CEO;
>
> (3) communications with prospective buyers or the eventual buyer during [the time frame] when Plaintiff was employed by SBSM and the month immediately after his termination in March 2016—through the end of April 2016; and
>
> (4) a copy of the final sales agreement.

(ECF No. 76 at 3.)  Defendant initially objected to producing any responsive documents, but later agreed to produce only e-mail communications that specifically reference Plaintiff by name (sought by Plaintiff under Topic 1, above).

Defendants object to additional production, in part because they contend the information sought is irrelevant to Plaintiff's claims.  They also believe the requested information is duplicative of financial documents already produced; and claim some of the information is no longer in Defendants' possession, but in the new owners' possession, and the new owner is unresponsive.

Plaintiff claims his requests have been sufficiently narrowed.  He asserts any financial representations surrounding the sale are relevant to demonstrate the organization was performing well financially, which would disprove Defendants' claims they fired him for cause when the companies failed to meet financial goals.  The information could also refute Defendants' claim they did not owe Plaintiff bonuses because he failed to reach financial benchmarks.  Plaintiff contends there should be some type of "due diligence" file Defendants made available to potential buyers, and believes the representations made to those potential buyers are contradictory to Defendants' claims in this case regarding their financial position.  Plaintiff asks that Defendants bear any cost of any "spoliation" related to information solely in the new owner's possession, because he served his discovery requests long before the sale was finalized.

Before addressing the arguments of the parties, the Court must first examine the appropriate standard for determining the relevance of the information Plaintiff seeks.

## a. Legal Standard - Relevance

Fed. R. Civ. P. 26(b)(1) permits discovery of "any non-privileged matter that is relevant to any party's claim or defense." Additionally, the scope of discovery must be:

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[23]

Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[24]

If the party seeking discovery meets its initial, minimal burden to demonstrate its request is relevant, on its face,[25] the resisting party cannot rely upon conclusory statements that the requested discovery is irrelevant.[26] It "must either demonstrate the discovery sought does not come within the broad scope of relevance defined in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm caused by the discovery would outweigh the presumption in favor of broad disclosure."[27] On the other hand, if the relevancy of the discovery request is not readily apparent on its face, the

---

[23] Fed. R. Civ. P. 26(b)(1).

[24] *Gilmore v. L.D. Drilling, Inc.*, No. 16-2416-JAR-TJJ, 2017 WL 3116576, at *1 (D. Kan. July 21, 2017) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[25] *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV-JPO, 2008 WL 2309011, at *2 (citing *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* No. 05–2164-MLB-DWB, 2007 WL 2122437, at *4 (D. Kan. July 20, 2007)

[26] *XPO Logistics Freight*, No. 16-MC-224-CM-TJJ, 2016 WL 6996275, at *4 (citing *Speed Trac Techs.*, No. 08-212-KHV-JPO, 2008 WL 2309011, at *3).

[27] *Id.*

party seeking the discovery bears the burden to demonstrate the request is relevant.[28]  As

a general rule, relevancy is determined on a case-by-case basis.[29]

### b.  Discussion

During the July 24, 2017 hearing, the parties were reminded this is not the first

time the issue of the sales agreement and sales-related information has come before this

Court.  A conference with the parties was convened on March 31, 2017 (*see* ECF No. 49)

to discuss discovery disputes, which, in part, led to the narrowing of Plaintiff's requests.

After review of the current motion and in-hearing discussion, the Court announced, and

now memorializes, the following orders on each disputed topic (*see* discussion *supra* p.

14)  regarding sale information.

### i.  Topic 1 – Communications with Prospective Buyers

The Court finds communications with prospective buyers or the eventual buyer

that reference Plaintiff by name to be relevant to the parties' claims and defenses.

Defendants claim they have already responded in full to this request.  However, in light

of the discussions during the hearing, Defendants are to certify they have fully produced

information responsive to this request.

### ii.  Topics 2 and 3 – Financial Representations

The communications referenced in Topics 2 and 3 appear facially relevant to

determine whether inconsistencies exist between the financial information produced to

---

[28] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).
[29] *Gilmore*, 2017 WL 3116576, at *2 (citing *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011)).

Plaintiff and any financial representations made to potential or eventual buyers that relate to the time period of Plaintiff's employment. Because the Court distinguishes between the two types of information, it does not find the communications to potential buyers would be duplicative of prior production by Defendants. Additionally, the requests are appropriately narrowed to the time frame during which Plaintiff was employed by Defendants.

Although Defendants have already produced some financial representations, Plaintiff contends many of these documents lack context, which leaves questions regarding the time frame and setting (i.e., produced to whom, by whom, etc.) in which the financial information was created or disclosed. Defendants agreed to review its prior production and address those concerns.

If Defendants have produced all responsive documents in their custody or control—Plaintiff (and quite frankly, the Court) must take them at their word. But based upon the discussions at hearing, it appears Defendants have not produced all communications and possibly "due diligence" information provided to potential/eventual buyers. If Defendants still possess such due diligence information, the Court reminds the parties that discovery is broad. The information responsive to these topics appears relevant, and Defendants must produce any "due diligence" file or related information forthwith.

Defendants must supplement their responses to Topics 2 and 3, and should clearly state and certify, in their supplementation, whether all responsive items in their possession have been produced.

### iii. Topic 4 – Final Sales Agreement

Again, the Court reminded the parties that the sales agreement was discussed in a prior conference, and the Court understood the document would be produced. Despite Defendants' claims that the agreement cannot possibly be relevant, especially since Plaintiff concedes the final purchase price may be redacted (*see* Pl.'s Mem., ECF No. 76, at 10), the Court understands the final selling price is not as important to Plaintiff as the other potential representations contained within the agreement. The Court finds the information relevant to the parties' claims and defenses, and will not permit Defendants to act as the gatekeeper of relevant information. It is also reasonable for the Court to determine Defendants kept a copy of the agreement. Although Defendants have valid privacy concerns with public disclosure of the final sales agreement, a Protective Order (ECF No. 19) is currently in place in this action, which will satisfy any concerns regarding confidentiality.[30]

Defendants were ordered to produce a copy of the final sales agreement within five days of the July 24 hearing. Defendants were permitted to redact the sale price, pursuant to earlier representations by the parties (*see* Pl.'s Mem., ECF No. 76, at 10). If the document has not been produced, Defendants shall produce it forthwith. Failure to do so will result in sanctions.

---

[30] *See Winfrey v. Hartford Life & Accident Ins. Co.*, No. 14-1034-EFM-JPO, 2014 WL 4981436, *4 (D. Kan. Oct. 3, 2014) (noting "information and documents are not shielded from discovery merely because they are confidential") (internal citations omitted); *see also BridgeBuilder Tax + Legal Servs., P.A. v. Torus Specialty Ins. Co.*, No. 16-2236-JWL-GEB, 2017 WL 914809, at *10 (D. Kan. Mar. 8, 2017) (noting "confidentiality" does not equate to "privilege").

### c. Conclusion on Plaintiff's RFP Nos. 25-26

As discussed above, and announced on the record during the hearing, Defendants are ordered to supplement their earlier production as follows: (1) Defendants are to confirm and certify they have fully produced information responsive to Topic 1; (2) Defendants will review their prior production of financial information responsive to Topics 2 and 3, and address Plaintiff's concerns regarding context; (3) Defendants must produce information relative to any "due diligence" file prepared in anticipation or pursuit of sale during the time Plaintiff was employed or the month immediately following; (4) Defendants must supplement their responses to Topics 2 and 3, and must clearly state and certify whether all responsive items in their possession have been produced; and (5) Defendants must produce a copy of the final sales agreement, with the final sales price redacted. All supplementation should have occurred within five days of the July 24 hearing.

### 2. Documents Responsive to Plaintiff's RFP Nos. 12, 32, and 37 Identified on Pages 4-7 of Defendants' Third Privilege Log

In addition to the sales-related financial documents, Plaintiff seeks to compel disclosure of specific communications described in Defendants' third privilege log. The communications all relate to Plaintiff's eligibility for benefits, Defendants' obligations to provide certain benefits, and Defendants' communications related to those topics. Plaintiff specifically sought related information in the following requests:

- **RFP No. 12**: Communications to or about Plaintiff relating to his eligibility or potential eligibility for any fringe benefit or to participate in any employee benefit plan.

- **RFP No. 32**: All documents relating to Defendants' obligations to provide COBRA notice.

- **RFP No. 37**: All communications, and all documents relating to communications, between Defendants and any Blue Cross/Blue Shield entity regarding Plaintiff.

In their initial discovery responses, Defendants first sought clarification of RFP No. 32, which Plaintiff then narrowed to specific types of documents. Eventually, Defendants responded they had no documents responsive to either RFP Nos. 12 or 32 (*see* Exhibits A, B, and D to ECF No. 76). In response to RFP No. 37, Defendants referred Plaintiffs to their production of documents numbered "SBSM 288-292" (ECF No. 76, Ex. A, and Ex. D; ECF No. 79[31]). Several weeks after serving their discovery responses, Defendants produced an initial privilege log (ECF No. 76, Ex. E). After Plaintiff questioned Defendants' categorization of multiple communications into one lump log entry, Defendants twice revised their privilege log (*see* ECF No. 76, Exs. F, G). The third privilege log separately identified various communications about ERISA and COBRA issues (ECF No. 76, Ex. G). Plaintiff now contends many documents listed on Defendants' third privilege log are directly responsive to the above requests.

Plaintiff asks the Court to order the disclosure of the majority of items on pages 4-7 of Defendants' log, although during the recent hearing, Plaintiff specifically excluded some documents from his request.[32] Defendants withheld all documents listed on their log, claiming attorney-client and/or work product protections apply. Following the

_____

[31] Defendants' discovery responses actually stated "SBSM 288-2<u>8</u>2" but Defendants corrected this apparent typographical error in their Response to the motion to compel (ECF No. 79).

[32] During the July 24, 2017 hearing, Plaintiff's counsel announced he does not seek the following numbered documents contained on Defendants' third privilege log (listed in the order contained on the log and announced by Plaintiff): nos. 3430-33, 3438-39, 3440, 3427, 3428, 3399, 3400-01, 3402-04, 3405-11, 3412-18, and 3419.

hearing, at the Court's request, Defendants delivered the documents to the Court for in camera review. After taking the opportunity to review the documents, the Court addresses the parties' arguments.

### a. Legal Standards - Privilege

Before addressing the parties' contentions, a review of the legal standards applicable to the attorney-client privilege and protection under the work product doctrine is necessary.

### i. Attorney-Client Privilege

In federal court, Fed. R. Evid. 501 determines the law applicable to analysis of attorney-client privilege.[33] Because the claims in this case arise under federal statute, federal common law governs review of the attorney-client privilege.[34] Under federal common law, the necessary elements of the privilege are: (1) where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) communications made related to that purpose, (4) made in confidence (5) by the client, (6) are permanently protected (7) from disclosures by the client or the legal advisor (8) unless the privilege is waived.[35]

---

[33] *Schmitz v. Davis*, No. 10-4011-RDR-KGS, 2011 WL 1627010, at *6 (D. Kan. Apr. 28, 2011) (citing *ERA Franchise Sys., Inc. v. N. Ins. Co. of N.Y.,* 183 F.R.D. 276, 278 (D. Kan. 1998)).

[34] *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM, 2012 WL 234024, at *5 (D. Kan. Jan. 25, 2012), *on reconsideration in part,* No. 09-2269-CM, 2012 WL 1580634 (D. Kan. May 4, 2012) (citing Fed. R. Evid. 501; *also New Jersey v. Sprint Corp.,* 258 F.R.D. 421, 425 (D. Kan. 2009) (where case arises under federal law, federal common law instead of Kansas law provides the rules of decision as to the attorney-client privilege)).

[35] *Leftwich v. City of Pittsburg, Kansas*, No. 16-2112-JWL-GLR, 2017 WL 1338838, at *1 (D. Kan. Apr. 12, 2017) (citing, *inter alia*, *New Jersey,* 258 F.R.D. at 425).

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[36] The attorney-client privilege should be "strictly construed and narrowly applied"[37] because "it deprives the factfinder from otherwise relevant information." [38]

The privilege protects from discovery the communications between an attorney and client, made in confidence, under "circumstances from which it may reasonably be assumed that the communication will remain in confidence."[39] Communications from client to attorney are privileged, as well as communications from attorney to client.[40] The attorney-client privilege is triggered only by a client's request for legal—not business—advice.[41] Although the communications between client and counsel are privileged, "[u]nderlying facts are not protected by the privilege."[42]

---

[36] *High Point SARL*, 2012 WL 234024, at *5 (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)).

[37] *Olson v. Shawnee Cty. Bd. of Comm'rs*, No. 12-2084-JTM-KGG, 2013 WL 1151481, at *2 (D. Kan. Mar. 20, 2013) (citing *Blann v. Rogers,* No. 11–2711–CM–KGG, 2012 WL 4596180, at *2 (D. Kan. Oct. 2, 2012) (citing *Trammel v. United States,* 445 U.S. 40, 50 (1980) (other internal citations omitted)).

[38] *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 373 (2001) (internal citations omitted); *Olson*, 2013 WL 1151481, at *2 (citing *Blann*, 2012 WL 4596180, at *2 (citing *United States v. Nixon,* 418 U.S. 683, 710 (1974) (exceptions to the demand for every man's evidence are not to be expansively construed because they are in derogation of the search for the truth)).

[39] *Olson*, 2013 WL 1151481, at *2 (citing *In re Qwest Commc'ns Int'l Inc., Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (internal citation omitted)).

[40] *Id*. (citing *Blann*, 2012 WL 4596180, at *2  (other internal citations omitted).

[41] *Id.* (citing *Blann*, 2012 WL 4596180, at *2 (citing *Lintz v. Am. Gen. Fin., Inc.,* No. 98–2213–JWL, 1999 WL 450197, at *3 (D. Kan. Jun. 24, 1999))).

[42] *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2017 WL 2555834, at *2 (D. Kan. June 13, 2017) (citing *Sprint Commc'ns Co. v. Comcast Cable Commc'ns, LLC,* Nos. 11-

### ii. Work Product Doctrine

The analysis of the work product doctrine is governed by the federal standard outlined in Fed. R. Civ. P. 26(b)(3).[43] For Defendants to establish protection under the work product doctrine, they must demonstrate "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[44] For work product protection to apply, "there must be a real and substantial probability that litigation will occur at the time the documents were created."[45]

### iii. Demonstrating Privilege

Fed. R. Civ. P. 26(b)(5)(A) is invoked "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." The party seeking

---

2684, 11-2685, 11-2686, 2014 WL 545544, at *4 (D. Kan. Feb. 11, 2014) (quoting *Williams v. Sprint/United Mgmt. Co.*, No, 03–2200, 2006 WL 1867478, at *10 (D. Kan. July 1, 2006)).

[43] *Kannaday v. Ball*, 292 F.R.D. 640, 648 (D. Kan. 2013) (citing *Frontier Refining, Inc. v. Gorman–Rupp Co.,* 136 F.3d 695, 702 n. 10 (10th Cir. 1998) (stating that "the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)") (internal citation omitted)); *see also Herrmann v. Rain Link, Inc.*, No. 11-1123-RDR, 2012 WL 1207232, at *8 (D. Kan. Apr. 11, 2012) ("federal law governs work-product issues").

[44] *Kannaday*, 292 F.R.D. at 648 (citing *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000) (other internal citations omitted)).

[45] *Id.*, and *Sperber v. Mercy Reg'l Health Ctr.*, No. 14-1331-EFM-GEB, 2016 WL 742883, at *2 (D. Kan. Feb. 24, 2016) (both citing *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 657 (D. Kan. 2007)).

to withhold information based upon either the attorney-client privilege or work product immunity bears the burden to demonstrate the asserted privilege applies.[46]   If the withholding party fails to make the required showing, by not producing a privilege log or by providing an inadequate one, the court may find the privilege waived.[47]

## b.   Discussion

Plaintiff does not argue the third privilege log insufficiently describes the withheld documents, nor does he argue the information contained therein would not generally be construed as privileged or protected communications.  Instead, his arguments focus on three reasons why those protections are not applicable under the current circumstances: (1) Defendants waived any claim of privilege by failing to assert privilege objections in their initial responses;  (2) Defendants' communications that include Bonnie Waldon, a Blue Cross and Blue Shield ("BCBS") representative, are not privileged because they are third-party communications; and 3) communications regarding administration of the ERISA plan are not privileged because they are subject to a fiduciary exception.  Each argument of the parties is addressed in turn.

### i.   Waiver

As a threshold argument, Plaintiff contends Defendants failed to assert their privilege or work-product protection objections in their initial discovery responses, and

---

[46] *Herrmann*, 2012 WL 1207232, at *12 (citing *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir. 1984); *McCoo v. Denny's Inc.,* 192 F.R.D. 675, 680 (D. Kan. 2000); *Gmeinder,* 191 F.R.D. at 642).
[47] *New Jersey*, 258 F.R.D. at 448 (citing *In re Universal Serv. Fund Tel. Billing Practices Litig.,* 232 F.R.D. 669, 671 (D. Kan. 2005) (internal citations omitted)).

the objections are therefore waived. Plaintiff is correct that, generally, "the court will deem waived any objections not asserted in the initial response to a discovery request but raised in response to a motion to compel."[48] But because waiver is viewed as a particularly harsh sanction, courts in this district usually "reserve such a penalty for only those cases where the offending party committed unjustified delay in responding to discovery."[49] "Minor procedural violations, good faith attempts at compliance and other such mitigating circumstances bear against finding waiver."[50]

Although Defendants did not specifically assert privilege objections to these three disputed requests, some of Defendants' confusion, in this instance, must be attributed to Plaintiff. Many of his discovery requests contain overlapping topics. For example, while RFP No. 12 sought communications "to or *about*" Plaintiff related to his eligibility for benefits (a relatively broad request), RFP No. 28 sought "all communications to, from, or among [Defendants] relating to COBRA coverage for [Plaintiff]." At least four other requests relate to Plaintiff's health care benefits, his continued coverage, the plan documents for the health plans, and even "all documents relating to [Defendants'] obligations to provide" continuing coverage (*see* Defs.' Resp., ECF No. 79, at 4, discussing Pl.'s RFP Nos. 28-32). Defendants timely lodged privilege objections to these other requests, and withheld those documents it found privileged from its initial

---

[48] *Herrmann*, 2012 WL 1207232, at *1 (citing *Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 621 (D. Kan. 2005) (citing, in part, Fed. R. Civ. P. 33(b)(4) (noting untimely objections are "waived unless the party's failure to object is excused by the court for good cause shown.")) (other internal citations omitted)).

[49] *New Jersey*, 258 F.R.D. at 452 (citing *Heavin v. Owens–Corning Fiberglass,* No. 02–2572, 2004 WL 316072, at *2 (D. Kan. Feb.3, 2004)); *see also Robinson v. City of Arkansas City, Kan.*, No. 10-1431-JAR, , at *4 (D. Kan. May 14, 2012) (internal citations omitted)).

[50] *New Jersey*, 258 F.R.D. at 448 (citing *In re Universal Serv. Fund Tel. Billing Practices Litig.,* 232 F.R.D. 669, 671 (D. Kan. 2005) (internal citations omitted)).

responses. Because Defendants did lodge privilege objections to the overlapping requests, the Court does not find Defendants' failure to object to these specific requests completely unjustified.

On the other hand, it is true that Defendants failed to identify, on their privilege log, the specific requests to which the listed documents and objections relate. This is not only a questionable practice,[51] but doing so may have helped to clarify the issues in this particular dispute. Finding a lack of clarity on both sides of this discovery issue, the Court declines to impose the harsh sanction of waiver and instead reviews the privilege issues on the merits.

### ii. Third-Party Communications

Some of the communications outlined on pages 4-7 of Defendants' privilege log include communications between Defendants, their counsel, and Bonnie Waldon, a BCBS representative. Plaintiff contends any communications with Ms. Waldon lose their privileged status because they were shared with her, and argues privilege log entries 2918-19, 2919-27, 2879-2917, and 2660-2878 should be produced.

"Because confidentiality is key to the privilege, the attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party."[52] However, both this district and the Tenth Circuit recognize the common interest

---

[51] Fed. R. Civ. P. 34(b)(2)(B) requires a response to <u>each</u> request or category of requests. In order for the party or court assessing a privilege objection to determine whether the items on the privilege log are truly responsive to the requests, it only makes sense that the log describe to which request each withheld document is responsive.

[52] *New Jersey*, 258 F.R.D. at 426 (citing *In re Qwest Commc'ns Int'l Inc*., 450 F.3d 1179, 1185 (10th Cir. 2006) (internal quotation and other internal citations omitted)).

doctrine, which "normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party."[53] "For the common interest doctrine to attach, most courts insist that the two parties have in common an interest in securing legal advice related to the same matter—and that the communications be made to advance their shared interest in securing legal advice on that common matter."[54] "The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial."[55]

Defendants contend any communications with BCBS representatives fall into this category. They claim, to the extent both Defendants and BCBS were unsure which of them was responsible for responding to Plaintiff's demands for documents, they all shared potential liability—and therefore, a common interest in discovering the information. Conversely, Plaintiff argues the plan representatives merely furnish an insurance product, but are not the plan's administrators, agents, or fiduciaries, and therefore share no common interest with Defendants.

The relevant question with which the Court reviews the communications is this: were Defendants and their third-party insurers communicating to formulate a common

---

[53] *High Point SARL*, 2012 WL 234024, at *7 (citing *Frontier Ref. Inc.,* 136 F.3d at 705; also citing *In re Qwest,* 450 F.3d at 1195 (noting that the common-interest doctrine "provides an exception to waiver because disclosure advances the representation of the party and the attorney's preparation of the case")).

[54] *Sawyer v. Sw. Airlines,* Nos. 01–2385–KHV, 01–2386–KHV, 2002 WL 31928442, at *3 (D. Kan. Dec. 23, 2002) (collecting cases; internal citations omitted); *see also High Point SARL*, 2012 WL 234024, at *7 (internal citations omitted).

[55] *Sawyer,* 2002 WL 31928442, at *3 (internal citations omitted).

legal strategy, which would entitle the third-party communications to privilege?[56]  Upon review of the documents, it appears Ms. Waldon, on behalf of the insurance company, was simply providing information to Defendants regarding the identity of the administrator and plan documents, such as benefits summaries and plan booklets—not working with her to craft a common legal strategy.  Therefore, with the above standards in mind, the Court makes the following orders regarding each set of disputed documents (addressed in the order contained on the privilege log and in the briefing):

- **2918-19**:  The first email on page 2918 is properly **withheld** as attorney-client communication and work product.  However, in the remaining communications, the Court finds no "common interest" between insurer and Defendants because Defendants are simply seeking, and the insurer providing, information.  The remainder of these pages must be **produced**.

- **2920-27**:  These documents contain only communications between Defendants' officers and insurers, and again, no common interest applies.  Under Fed. R. Civ. P. 26(b)(1), the Court finds the relevance of the communications to the claims in this case questionable, but relevance at discovery is broad.  That said, the Court finds the benefit of the information is potentially outweighed by the damage or embarrassment the disclosure could impose on Defendants.  On its own motion, the Court orders protection of the information under Rule 26(c)(1).  These pages must be **disclosed as "confidential: for attorney's eyes only."**

- **2879-2917**:  The first one-half page email on 2879 is properly **withheld** as attorney-client communication.  The remainder of the email string (mid-page 2879-2889), with the exception of the first email between Defendants and Ms. Waldon, is identical to 2920-27, and must be **produced in the same manner** as described above.  Pages 2890-2917 contain a "Unum ERISA Handbook" which includes neither privileged communications nor work product, and should be **produced**.

- **2660-2878**:  The first email on page 2660 between Defendants and counsel must be **redacted** as attorney-client communication.  However, the remainder (mid-page 2660-2661) are simply communications between Defendants and their insurers, not for the purpose of legal advice, but for gathering information and must be **produced**. Pages 2662-2878 contain health benefit plan booklets, which are underlying facts not covered by any privilege, and must be **produced**.

---

[56] *Id*. (citing *Libbey Glass, Inc. v. Oneida, Ltd.,* 197 F.R.D. 342, 348 (N.D. Ohio 1999)).

### iii.    Fiduciary Exception

Plaintiff argues the remainder of the communications contained on pages 4-7 of Defendants' third privilege log must be produced due to the "fiduciary exception" to the attorney-client privilege. "In the ERISA context, the fiduciary exception comes into play when an employer who is the administrator for an ERISA plan invokes the attorney-client privilege against the plan beneficiaries."[57] "This fiduciary exception derives from the principle that when an attorney advises a plan fiduciary about the administration of an employee benefit plan, the attorney's client is not the fiduciary personally but, rather, the trust's beneficiaries."[58] Essentially, the holdings of other courts "mark out two ends of a spectrum. On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries, the attorney-client privilege remains intact."[59]

But "courts have generally found the fiduciary exception inapplicable to communications made during a time when the parties' interests were not aligned or when the subject of the communications did not involve matters that a fiduciary would owe a duty to disclose to a beneficiary."[60] In the Court's review of the documents, it appears

---

[57] *Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 619 (D. Kan. 2001) (collecting cases, internal citations omitted).
[58] *Id*. (collecting cases, internal citations omitted).
[59] *Id*. at 620 (internal citations omitted).
[60] *Herrmann*, 2012 WL 1207232, at *6.

the communications fall under this umbrella. Nearly all of the communications took place after litigation began, and the few occurring earlier were created after litigation was threatened. Defendants, as plan administrators, were communicating with counsel in order to defend themselves against Plaintiff's claims, and therefore they lacked any "mutuality of interest"[61] with Plaintiff as the beneficiary. Therefore, the Court finds that Plaintiff, as the party asserting the fiduciary exception,[62] failed to meet his burden to establish the applicability of the exception to the communications otherwise protected by attorney-client privilege or work product protection.

The Court has now had the benefit of its review of all documents included on the disputed portion of Defendants' privilege log. With all of the above standards in mind—the attorney-client privilege, work product protection, third-party communications issue, and the fiduciary exceptions—the Court makes the following rulings regarding each line entry of documents (addressed in the order contained on the privilege log):

- **1694-95**: Documents are properly **withheld** under the attorney-client privilege and work product doctrine.

- **1698-1700**: Documents are properly **withheld** under the attorney-client privilege and work product doctrine.

- **1701-03**: Documents are properly **withheld** under the attorney-client privilege and work product doctrine.

---

[61] *See Luper v. Bd. of Trustees of Police & Fire Ret. Sys. of Wichita, Kansas*, No. 15-1399-EFM-KGG, 2017 WL 3216662, at *3 (D. Kan. July 28, 2017) (citing *Herrmann*, 2012 WL 1207232, at *7) ("when there is no mutuality of interest between the fiduciary and beneficiary, the reasons for applying the fiduciary exception fade")).

[62] *Id*. (citing *Herrmann*, 2012 WL 1207232, at *7) (noting that although the party asserting the privilege bears the burden to demonstrate privilege, the party asserting the fiduciary exception bears the burden to establish the applicability of the exception to otherwise privileged or work-product protected documents).

- **2652-59**:  Documents are properly **withheld** under the attorney-client privilege and work product doctrine.

- **2642-51**:  Communications between Defendants and counsel on pages 2642-43 are properly **withheld** under the attorney-client privilege and work product doctrine.  But the benefits summary on pages 2644-51 must be **produced** as non-privileged.

- **2424-2641**:  The first email on page 2424 is attorney-client communication and must be **redacted**, but the remainder of the communications are with a third party and must be **disclosed**.  The attachments on pages 2425-2641 contain a benefits summary and handbooks, which are underlying facts, not privileged or protected, and must be **produced**.

- **2212-2423**:  The first email on page 2212 is attorney-client communication and must be **redacted**, but the remainder of the communications are between Defendants and a third party and must be **disclosed**.  The attachments on pages 2215-2423 contain benefits handbooks, which are not privileged or protected and must be **produced**.

- **2196-2203**:  The first email on page 2196 is attorney-client communication and must be **redacted**, but the remainder of the communications are between Defendants and third parties and must be **disclosed**.  The attachment (2199-2203) is a blank standard BCBS form, which is not privileged or protected and must be **produced**.

- **2204-11**:  Documents are properly **withheld** under the attorney-client privilege and work product doctrine.

- **1978-2195**:  The first email on page 1978 is properly **withheld** as attorney-client communication.  The remainder of the documents are identical to items 2424-2641 above, and must be **treated in the same manner**.

- **2928-2930**:  This email string is a copy-and-paste combination of attorney-client communications dated September 7, 2016, with an embedded email from Joel Lomurno (General Manager for one of SBSM's subsidiaries) to Plaintiff on the same date.  Defendants are permitted to **redact** the initial email header and first line on page 2928, as well as the email which begins on bottom quarter of page 2929-30 as attorney-client communication.  However, from "Steve see below" on page 2928 through the bottom quarter of page 2929 must be **produced**, because they are non-privileged communications between Defendants and Plaintiff.

- **3326-29**:  The first email on page 3326 is properly **withheld** as attorney-client communication, but the remainder of the communications are among Defendants' employees and between Defendants and third parties.  Because those communications are not privileged nor work product, they must be **produced**.

- **3420**: Document is properly **withheld** under the attorney-client privilege and work product doctrine.

- **3421-23**: Documents are properly **withheld** under the attorney-client privilege and work product doctrine.

- **1708**: Document is properly **withheld** under the attorney-client privilege and work product doctrine.

- **1709-1719**: The first two emails on page 1709 are properly **withheld** as attorney-client communication. The remainder of the email string, beginning with the final email on the bottom quarter of page 1709, are identical to items 2879-2889 and 2920-2927 above, and must be **treated in the same manner** (partial production in full; partial as "attorneys' eyes only") as described above.

- **1720-1737**: Documents are properly **withheld** under the attorney-client privilege and work product doctrine.

- **1738**: This email is between defense counsel, Defendants, and David Dennis (a BCBS Texas representative) two months into litigation. Because there is no mutual interest between Plaintiff and Defendants, the Court finds the fiduciary exception inapplicable to this communication. And, in the context of this specific communication with a third party, the Court finds a common interest between Defendants and the plan representative. This communication is properly **withheld**.

- **1739**: Document is properly **withheld** under the attorney-client privilege and work product doctrine.

- **1740-1957**: The email on page 1740 is properly **withheld** as communication between defense counsel and outside counsel and under the work product doctrine. The attachments, however, are simply underlying facts and are the same benefits summary and booklets ordered produced in 2662-2878, 2425-2641, 2215-2423, and 1979-2195. Pages 1741-1957 must be **produced**.

- **1958-59**: Documents are properly **withheld** as communication between defense counsel and outside counsel and under the work product doctrine.

- **1960-71**: Documents are properly **withheld** under the attorney-client privilege and work product doctrine.

- **1972**: Document is properly **withheld** under the attorney-client privilege and work product doctrine.

- **1973**: Document is properly **withheld** under the attorney-client privilege and work product doctrine.

- **1974-75**: Documents are properly **withheld** under the attorney-client privilege and work product doctrine.

- **1976-77**: Documents are properly **withheld** under the attorney-client privilege and work product doctrine.

### C. Conclusion on Motion to Compel

Finding some documents properly withheld by Defendants, but requiring others to be produced as described above, Plaintiff's motion to compel is granted in part and denied in part. Despite the partial granting of Plaintiff's motion, at this juncture, the Court finds the award of sanctions inappropriate under Fed. R. Civ. P. 37(a)(5)(C). The circumstances of this dispute, including the continuing efforts of the parties to resolve it and the well-reasoned positions of both parties, make an award of expenses unjust.

### VI. Joint Motion to Extend All Deadlines (ECF No. 78)

In light of the parties' discovery disputes and the above issues, the parties were unable to complete discovery in the time frame in which they originally expected to do so. The parties filed a joint request to extend all remaining deadlines (ECF No. 78) and suggested specific deadlines to the Court. However, during the July 24 hearing, the Court found the proposed deadlines infeasible, and denied the motion in part. The motion was granted in part, however, because the Court will convene a supplemental scheduling conference as noted below to establish workable deadlines.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Amend Complaint (**ECF No. 50**) is **GRANTED**. Plaintiff's Amended Complaint was filed on July 24, 2017 (ECF No. 86).

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to file Amended Answer and Counterclaims (**ECF No. 57**) is **GRANTED** as unopposed. Defendants' Answer to Amended Complaint and Counterclaim was filed on August 7, 2017 (ECF No. 88).

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Discovery (**ECF No. 75**) is **GRANTED in part and DENIED in part** as set forth above. Defendants shall produce those documents ordered produced above by **no later than 14 days** following the filing of this Order.

**IT IS FURTHER ORDERED** that the parties' Joint Motion to Extend Remaining Deadlines (**ECF No. 78**) is **DENIED in part**, to the extent that the deadlines originally submitted by the parties are deemed no longer feasible. The motion is **GRANTED in part**, in that the Court will convene a supplemental scheduling conference **on September 13, 2017, at 10:00 a.m.** to establish more appropriate deadlines. The conference will be held by telephone, to be initiated by the Court. Counsel shall confer, and by **September 6, 2017**, Plaintiff must submit a revised report of the parties' planning conference to the chambers of the undersigned magistrate judge. The report must follow the Court's prescribed form and must be submitted electronically

in .pdf format as an attachment to an e-mail sent to *ksd_birzer_chambers@ksd.uscourts.gov*.  It must <u>not</u> be filed with the Clerk's Office.

**IT IS SO ORDERED.**

Dated this 24th day of August, 2017.

s/ Gwynne E. Birzer       <br>
GWYNNE E. BIRZER<br>
United States Magistrate Judge